UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Shereen Santalesa and Khalil Jabrane,

    Plaintiffs,               Civil No.:

    - against -

Riseboro Community Partnership Inc.,

                           **CIVIL COMPLAINT**     1:21-cv-03228

    Defendant.
-----------------------------------------------------------X

    PlaintiffsShereen Santalesa and Khalil Jabrane, by and through undersigned counsel, as their Complaint against Defendant, state and aver the following:

## INTRODUCTION

1. Plaintiff Shereen Santalesais a former employee of Riseboro Community Partnership Inc. ("Riseboro"), who alleges that Defendant discriminated against her on the basis of race and national origin, in contravention of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.*, and retaliated against her for her engagement in activity protected by Title VII.

2. Santalesais a resident of Cortlandt Manor, county of Westchester, and state of New York.

3. Plaintiff Khalil Jabraneis a former employee of Riseboro, who alleges that Defendant discriminated against him on the basis of race and national origin, in contravention of Title VII and retaliated against him for his engagement in activity protected by Title VII.

4. Jabrane is a resident of Panama City, county of Bay, and state of Florida.

5. Defendant Riseboro Community Partnership Inc. is a New York corporation and conducts business primarily out of its headquarters at 565 Bushwick Avenue, Brooklyn, New York 11206.

6. Jurisdiction is proper over Defendant pursuant to 28 U.S.C. § 1331 in that Plaintiffs are alleging federal law claims arising under Title VII, 42 U.S.C. § 2000, *et seq*.

7. On September 3, 2020, Santalesa filed a Charge of Discrimination, specifically Charge No. 520-2020-03624, with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated and retaliated against her in violation of Title VII.

8. On March 8, 2021, the EEOC issued Santalesa the Right to Sue relative to the above-referenced Charge.

9. Santalesa has properly exhausted her administrative remedies as to her claims against Defendant.

10. On September 3, 2020, Jabrane filed a Charge of Discrimination, specifically Charge No. 520-2020-03282, with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated and retaliated against him in violation of Title VII.

11. On March 9, 2021, the EEOC issued Jabrane the Right to Sue relative to the above-referenced Charge.

12. Jabrane has properly exhausted his administrative remedies as to his claims against Defendant.

13. Venue is properly placed in the United States District Court for the Eastern District of New York, because it is the district court for the district and county within which a substantial part of the events giving rise to the claims alleged in this Complaint occurred.

14. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTUAL ALLEGATIONS**

15. On or about December 3, 2018, Santalesa was hired by Riseboro to serve as Vice President of Human Resources ("VP of HR").

16. Santalesa is of Southeast Asian and Indian race/national origin.

17. Santalesa excelled in this role and at all times during her employment with Riseboro conducted herself in a professional manner.

18. Up until Defendant manufactured a pretextual basis for ousting Santalesa, she had a spotless employment record and was consistently given positive feedback about her job performance.

19. In or around January 2019, Jabrane, through a job placement company, began a temporary assignment as an HRIS Analyst with Riseboro.

20. In or around September 2019, after exhibiting strong job performance, Riseboro offered and Jabrane accepted a permanent position with Riseboro as an HRIS Analyst.

21. Jabrane is of Arab and African/Moroccan race/national origin.

22. After earning a permanent position with Riseboro, Jabrane continued to exhibit strong work performance and up until Riseboro fabricated the same pretextual basis to terminate Jabrane's employment that it used to fire Santalesa, had a spotless employment record.

23. On or about June 1, 2019, during his temporary assignment, Jabrane had job duties that involved reporting information to Riseboro's Payroll Manager, Lena Lobachevsky.

24. Lobachevsky is Caucasian.

25. During their initial meetings, Lobachevsky continually questioned Jabrane about his race, national origin, religion, and immigration status, despite those topics being completely unrelated to the work Jabrane was performing on behalf of Riseboro.

26. Lobachevsky asked Jabrane if he was related to Santalesa because they both had Arabic names.

27. Upon learning that Jabrane had a Permanent Resident Card, also known as a "green card," Lobachevsky interrogated Jabrane on how and when he came to the United States and obtained a green card.

28. Despite the uncomfortable and inappropriate nature of the conversation, Jabrane informed Lobachevsky that he received a green card through a Diversity Visa Program, to which Lobachevsky quipped, "I am sure Trump wasn't president then."

29. Jabrane, as would be expected, was offended by Lobachevsky's incessant probing into his race, national origin, religion, and immigration status.

30. As Jabrane continued to work under Lobachevsky-White, he quickly observed that he was being treated far different than other Riseboro employees who were subordinates to Lobachevsky.

31. Lobachevsky would continually track Jabrane's whereabouts and work activity, while not exhibiting the same behavior towards similarly-situated non-Arab employees.

32. When Jabrane would ask Lobachevsky work-related questions, especially in group settings, Lobachevsky would ridicule Jabrane and tell him not to get too comfortable in his job.

33. During conference calls, including calls with outside vendors, Lobachevsky would make offensive comments to Jabrane about English being his second language and making inappropriate remarks about Jabrane not being able to understand what was being talked about on the call.

34. As would be expected of her job duties as VP of HR, Santalesa was responsible for receiving and investigating complaints from employees regarding unlawful employment practices, such as discrimination and retaliation.

35. On or about August 29, 2019, Jabrane approached Santalesa to express concern about Lobachevsky's discriminatory treatment of him, specifically mentioning that Lobachevsky was treating him in a manner far different than non-Arab employees.

36. In response, Santalesa urged Jabrane to file an internal complaint against Lobachevsky outlining the discriminatory behavior she was exhibiting to Jabrane on a regular basis.

37. Jabrane's August 29, 2019 complaint to Santalesa constituted protected activity under Title VII.

38. Santalesa's August 29, 2019 suggestion to Jabrane to file an internal complaint regarding discriminatory actions by Lobachevsky constituted protected activity under Title VII.

39. On or about October 3, 2019, an "HR-Payroll Catchup Meeting" in which Lobachevsky and Jabrane were in attendance had to be paused due to Lobachevsky screaming and exhibiting overtly hostile behavior towards Jabrane.

40. The actions by Lobachevsky during the October 3, 2019 meeting were completely unreasonable and continued the long-standing discriminatory attitude Lobachevsky exhibited towards Jabrane.

41. In response to the actions of Lobachevsky on October 3, 2019, Jabrane again approached Santalesa to complaint about being singled out by Lobachevsky on the basis of his race and national origin.

42. The early October 2019 action by Jabrane constituted continuing protected activity under Title VII.

43. On or about October 7, 2019, Santalesa approached Riseboro's Controller, Francesca Bowen and Interim-CFO, Anthony Carrella to relay Jabrane's complaints that Lobachevsky was treating him in a discriminatory manner.

44. The October 7, 2019 action by Santalesa constituted continuing protected activity under Title VII.

45. Bowen and Carrella are Caucasian.

46. Santalesa informed Bowen and Carrella about Lobachevsky's ongoing discriminatory treatment of Jabrane, including Lobachevsky's hostile actions during the October 3, 2019 meeting and Lobachevsky improperly using Riseboro's Paycom GPS program to track Jabrane's whereabouts.

47. Upon information and belief, Lobachevsky did not use Riseboro's Paycom GPS program to track any other employees other than Jabrane.

48. Santalesa specifically stated to Bowen and Carrella that Jabrane was concerned he was being treated differently than non-Arab employees working under Lobachevsky.

49. Bowen, who Lobachevsky directly reported to, ignored Jabrane's concerns relayed to her by Santalesa, and instead stated that she was "not going to take sides" and was "choosing not to get involved."

50. On or about November 25, 2019, Carrella acknowledged in an email that "there's definitely an issue between HR Staff and P/R [payroll] Staff."

51. Carrella's November 25, 2019 email was ostensibly referring to the complaints made by Jabrane against Lobachevsky.

52. Despite the complaints of discrimination being relayed to Carrella and Bowen, and Carrella acknowledging in writing that there was an issue between Jabrane and Lobachevsky, no investigation or remedial action against Lobachevsky took place.

53. Even though Riseboro continually failed to act based on the clear complaints from Jabrane relayed to Riseboro management, Santalesa continued to advocate on Jabrane's behalf to ensure his complaints of discriminatory treatment were heard.

54. On or about January 6, 2020, Santalesa escalated Jabrane's complaints of discrimination and mistreatment to Riseboro's new CFO, Alexandra Dyer, and its CEO, Scott Short.

55. Dyer and Short are Caucasian.

56. Santalesa told Dyer and Short about the issues that Jabrane complained to her about on numerous occasions, including that Jabrane felt his treatment by Lobachevsky was far different than the treatment of non-Arab employees.

57. The January 6, 2020 action by Santalesa constituted continuing protected activity under Title VII.

58. Between January and February 2020, nothing was done by Dyer, Short, or any other member of Riseboro management, outside of Santalesa, to address Jabrane's many attempts to complain about discriminatory treatment.

59. On or about February 6, 2020, Jabrane again approached Santalesa and complained that the discriminatory mistreatment he was experiencing was worsening, and now Dyer was targeting him and treating him differently than non-Arab employees.

60. The February 6, 2020 action by Jabrane constituted continuing protected activity under Title VII.

61. Since Santalesa's previous attempts to escalate Jabrane's complaints were outright ignored, Santalesa decided to bring Jabrane's concerns to Riseboro's General Counsel, Sandhya Boyd.

62. On or about February 19, 2020, Santalesa and Jabrane spoke with Boyd and again relayed the discriminatory treatment Jabrane had been experiencing from Lobachevsky since mid-2019 and more recently from Dyer.

63. In the conversation, Santalesa and Jabrane specifically mentioned to Boyd that Jabrane believed the aggressive and hostile behavior from Lobachevsky and Dyer towards him was due to his race and national origin.

64. The February 19, 2020 action by Santalesa and Jabrane constituted continuing protected activity under Title VII.

65. A little over a week later, when Santalesa realized no action was being taken despite assurances from Boyd that Jabrane's complaints would be investigated, Santalesa spoke with Boyd again regarding Jabrane's complaints of discrimination.

66. On or about February 27, 2020, Santalesa followed up with Boyd and was shocked to learn that Boyd and Dyer, who was a subject of Jabrane's complaints of discrimination, had decided that there would be no further investigation of Jabrane's complaints.

67. The February 27, 2020 action by Santalesa constituted continuing protected activity under Title VII.

68. Less than a week after Santalesa again approached Boyd regarding Jabrane's complaints of discrimination and Santalesa was told that Boyd and Dyer were shutting down any possible investigation of Jabrane's claims, Santalesa was called into a meeting with Short and Boyd.

69. On or about March 3, 2020, Santalesa was informed by Short and Boyd that her employment was terminated effective immediately.

70. That same day, Jabrane was called into a meeting with Dyer, who he had previously complained was discriminating against him on the basis of his race and national origin, and was told that he too was being fired effective immediately.

71. Jabrane was told by Dyer that his termination of employment was due to "timecard falsification" and that Santalesa was involved in the falsification.

72. The conspiracy theory set forth by Riseboro, concocted less than a week after Santalesa made another attempt to escalate Jabrane's complaints of discrimination, is wholly pretextual, and was fabricated simply to oust two dedicated employees who were attempting to rectify unlawful employment practices within Riseboro.

73. Santalesa and Jabrane did not in any way work in concert to fabricate timecards or violate any Riseboro policy when it came to paid time off.

74. Even if Santalesa and Jabrane did violate Riseboro policies concerning paid time off, similarly-situated non-Arab and non-Southeast Asian employees were excused when making multiple major violations of Riseboro policy.

75. Upon information and belief, a non-Arab and non-Southeast Asian Riseboro employee was permitted to keep her job after it was discovered that she was attempting to practice law on behalf of Riseboro in a jurisdiction in which she was not licensed.

76. Upon information and belief, Ryan Cassidy, a Caucasian Riseboro employee, was responsible for the nonpayment of wages and misclassification of overtime exemption for a former Riseboro employee, Rose Cabrera.

77. Despite Cassidy's error causing Riseboro to pay a considerable sum of money to Cabrera for damages, Cassidy was not disciplined and was allowed to continue his employment with Riseboro.

78. Riseboro terminated Santalesa's employment for purely pretextual reasons because Santalesa is Southeast Asian/Indian race and national origin.

79. Riseboro terminated Santalesa's employment for purely pretextual reasons because Santalesa escalated on numerous occasions Jabrane's complaints that Riseboro was discriminating against him on the basis of his race and national origin.

80. Riseboro terminated Jabrane's employment for purely pretextual reasons because Jabrane is Arab/Moroccan race and national origin.

81. Riseboro terminated Jabrane's employment for purely pretextual reasons because Jabrane complained on numerous occasions that he was being discriminating against on the basis of his race and national origin.

82. Upon information and belief, Jabrane's position and/or job duties were assumed by a non-Arab individual.

83. Upon information and belief, Santalesa's position and/or job duties were assumed by a non-Southeast Asian individual.

**FIRST CAUSE OF ACTION**
**(Race and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964)**
**Shereen Santalesa**

84. Santalesaincorporates by reference the allegations from the preceding paragraphs as if fully restated herein.

85. Santalesa is Southeast Asian and Indian, and therefore is a member of statutorily-protected classes under Title VII.

86. Throughout her employment, Santalesa was fully competent and qualified for the position of Vice President of Human Resources at Riseboro.

87. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race or national origin.

88. Defendant manufactured false allegations against Santalesa and ultimately terminated Santalesa's employment because of her race and national origin.

89. Defendant violated Title VII by terminating Santalesa's employment because of her race and national origin.

90. As a direct and proximate result of Defendant's conduct, Santalesa suffered and will continue to suffer damages.

**SECOND CAUSE OF ACTION**
**(Race and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964)**
**Khalil Jabrane**

91. Jabrane incorporates by reference the allegations from the preceding paragraphs as if fully restated herein.

92. Jabrane is Arab and African/Moroccan, and therefore is a member of statutorily-protected classes under Title VII.

93. Throughout his employment, Jabranewas fully competent and qualified for the position of HRIS Analyst at Riseboro.

94. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race or national origin.

95. Defendant manufactured false allegations against Jabrane and ultimately terminated his employment because of his race and national origin.

96. Defendant violated Title VII by terminating Jabrane's employment because of his race and national origin.

97. As a direct and proximate result of Defendant's conduct, Jabrane suffered and will continue to suffer damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)
### Shereen Santalesa

98. Santalesa incorporates by reference the allegations from the preceding paragraphs, as if fully restated herein.

99. Pursuant to Title VII, it is unlawful for an employer to retaliate against an employee for engaging in legally protected activity.

100. Santalesa engaged in legally protected activity when she relayed, on numerous occasions, Jabrane's complaints that Defendant discriminated against him on the basis of his race and national origin

101. Defendant targeted and ultimately terminated Santalesa's employment for pretextual reasons in retaliation for her engagement in legally protected activity.

102. As a direct and proximate result of the unlawful conduct of Defendant, Santalesa suffered and will continue to suffer damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)
### Khalil Jabrane

103. Jabrane incorporates by reference the allegations from the preceding paragraphs, as if fully restated herein.

104. Pursuant to Title VII, it is unlawful for an employer to retaliate against an employee for engaging in legally protected activity.

105. Jabrane engaged in legally protected activity when he complained, on numerous occasions, that Defendant discriminated against him on the basis of his race and national origin

106. Defendant targeted and ultimately terminated Jabrane's employment for pretextual reasons in retaliation for his engagement in legally protected activity.

107. As a direct and proximate result of the unlawful conduct of Defendant, Santalesa suffered and will continue to suffer damages.

## CONCLUSION

Plaintiffs Shereen Santalesa and Khalil Jabrane seek judgment against Defendant in an amount in excess of $75,000 per Plaintiff to fully, fairly, and justly compensate them for injury, damage, and loss, and respectfully prays that this Court enter judgment in theirfavor and award them past and future economic and non-economic compensatory damages, fringe benefits, consequential damages, incidental damages, punitive damages, liquidated damages, interest, all reasonable attorney's fees, costs and expenses, and any additional legal or equitable relief available under law.

By: /s/ Eddy Pierre Pierre
Eddy Pierre Pierre, Esq.
Pierre Pierre Law, P.C.
Attorney for Plaintiffs
211 East 43rd Street, Suite 608
New York, New York 10017
Phone: (646) 992-8383
Fax: (718) 504-6962
fedcourt@pierrepierrelaw.com

## JURY DEMAND

Plaintiffs Shereen Santalesa and Khalil Jabrane demand a trial by jury by the maximum number of jurors permitted.

/s/ *Eddy Pierre Pierre*
Eddy Pierre Pierre
*Attorney for Plaintiffs*